## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MARCUS BAKER,<br><br>        Plaintiff,<br><br>        v.<br><br>MATCH GROUP, INC. *et al.*<br><br>        Defendants. | Case No. 2022-cv-6924<br><br>Hon. Manish S. Shah<br><br>Magistrate Judge Jeffrey Cole |

### **DEFENDANTS' MOTION TO RECONSIDER THIS COURT'S MAY 31, 2023 RULING**

Daniel S. Saeedi (ARDC No. 6296493)
dsaeedi@taftlaw.com
Rachel L. Schaller (ARDC No. 6306921)
rschaller@taftlaw.com
Elizabeth A. Winkowski (ARDC No. 6316704)
ewinkowski@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
Telephone: (312) 527-4000

Stephen A. Broome (admitted *pro hac vice*)
stephenbroome@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90405
Telephone: (213) 443-3000

*Attorneys for Defendants Match Group, Inc., Match Group, LLC, Hinge, Inc. Humor Rainbow, Inc., People Media, Inc., and Affinity Apps, LLC*

The Court's May 31, 2023 Order Denying Defendants' Motion to Dismiss (DKT 27, "Order") manifestly erred by (1) deciding the issue of small claims court jurisdiction instead of leaving it for the small claims courts to decide, and (2) ruling that small claims courts lack jurisdiction over Baker's claims. The Court should reconsider the Order and dismiss this case.

## LEGAL STANDARD

Motions for reconsideration serve "to correct manifest errors of law or fact or to present newly discovered evidence." *Fox v. Admiral Ins. Co.*, 2016 WL 3520145, at *1 (N.D. Ill. June 28, 2016) (citing *Caisse Nationale de Credit Agricole v. CBI Indus.*, Inc., 90 F.3d 1264, 1270 (7th Cir. 1996)). A "manifest error" occurs when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Id.* at *1 (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). Further, this Court's jurisdiction may be addressed at any time. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004).

## ARGUMENT

**I. THIS COURT MANIFESTLY ERRED BY DECIDING WHETHER SMALL CLAIMS COURTS HAVE JURISDICTION OVER BAKER'S CLAIMS**

**A. The Court's Finding that a Small Claims Court Could Not Hear Baker's Claims If He Were to File There Is Advisory and Violates Article III**

The Court determined that small claims courts in Illinois and Texas would not have jurisdiction over Baker's claim if he were to file suit there. That determination is barred by Article III's case or controversy requirement. The proper course is for Baker to file a complaint in small claims court and let that court determine its own jurisdiction. This not only follows the principles of Article III, but honors the parties' ADR Agreements and the decision reached by JAMS.

Article III's "case or controversy" requirement "keeps federal courts in the business of resolving existing legal disputes and out of the business of offering advice on the legality of a

1

proposed course of action." *Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333, 1337–38 (N.D. Ill. 1996). The controversy cannot be "hypothetical or abstract"; it "must be definite and concrete, touching the legal relations of parties." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240 (1937) (construing Declaratory Judgment Act's actual controversy requirement, which is coextensive with Article III's "case or controversy" requirement). The Court may not "issue advisory opinions based on fears of future judgments and speculation." *Basic*, 949 F. Supp. at 1338.

Because the parties' ADR Agreements clearly prohibit litigation outside of small claims court, the central issue in the Motion to Dismiss briefing was whether Defendants breached or waived the ADR Agreements merely by electing small claims court. Baker claimed Defendants did so by electing small claims in bad faith. Defendants argued otherwise. The Court correctly sided with Defendants on this issue. *See* Order at 5. Neither party asked the Court to decide whether small claims courts *could* hear Baker's claims—for good reason. Baker has never filed a small claims complaint, and thus, the Court's views on this issue are purely advisory. Indeed, in finding small claims courts are inadequate, the Court had to speculate as to what would be alleged, where the claims would be filed, and what the small claims court would decide.

*Basic* is instructive. There, the plaintiff—who had been sued in New Zealand—sought a declaration in this Court that any judgment entered by a New Zealand court would be invalid. 949 F. Supp. at 1337–38. The court held that, in the absence of an actual foreign judgment, there was no case or controversy, and concerns about a hypothetical judgment were not ripe. *Id*. By seeking declaratory relief in Illinois, the plaintiff attempted "to render null and void a possible future New Zealand judgment [that] may never come to pass." *Id*. The court refused to speculate about the basis for any future judgment because the plaintiff could "later seek to withdraw certain claims,

2

and add different and unique claims." *Id*. Thus, it would be premature for the court to consider "the prospective effect of a possible New Zealand judgment." *Id*.

Here, the Court undertook to construe a hypothetical small claims complaint that may never come to pass and necessarily would look very different from the one Baker filed in this Court (particularly given the ADR Agreements prohibit class actions). *See* Order at 3 (finding Baker "waived the right to file a class action"). The Court was left to speculate about which small claims court Baker might file in, the relief he might seek, and how that forum might rule. *See id.* & fn. 4. By attempting to construe a hypothetical complaint that may or may not be filed in an unknown small claims court, the Court exceeded its jurisdiction and issued an advisory opinion. Instead, the Court should dismiss this case. If Baker decides to file in small claims court, Defendants can respond and that court can determine its jurisdiction over the actual complaint filed. This approach follows the ADR Agreements' delegation to small claims court (*see* Section I.B, *infra*), JAMS' instruction to Baker to proceed in small claims court (*see* Section I.C, *infra*) and Article III.

### B. The Court Manifestly Erred by Failing to Consider the Parties' Delegation of this Issue to the Small Claims Court

The Court manifestly erred in failing to apply the ADR Agreements, as written.[1] In so ruling, the Court did not consider at least two important facts and controlling case law.

*First*, the Court did not consider that Baker's ADR Agreement with Tinder specifically delegates the question of small claims court jurisdiction to small claims courts themselves: "Any controversy over the small claims court's jurisdiction *shall be determined by the small claims*

---

[1] The Court correctly held that (1) "Baker's claims are governed by [Defendants'] terms and services agreements"; (2) "[t]hose agreements say that defendants have the right to choose small claims court, rather than arbitration"; (3) "the parties' arbitration agreements—and the exceptions for small claims court litigation—are a type of forum-selection clause"; and (4) "[a]s the party opposing dismissal in accordance with that forum selection, Baker bears the burden of showing that dismissal isn't warranted." Order at 4. The Court also correctly rejected Baker's argument that "the small claims court election is unenforceable because defendants breached the duty of good faith and fair dealing." *Id.* at 4-5.

3

*court.*[2] (Tinder TOU, attached as Ex. 1 at 18, 20). His ADR Agreement with OkCupid (and JAMS Streamlined Arbitration Rules, incorporated therein) similarly make clear that the questions of whether claims are subject to arbitration, or litigation in small claims court, are delegated exclusively to those respective forums. (OkCupid TOU, attached as Ex. 2 at 15-16); *see also* JAMS Streamlined Rule Procedures 8(b).

As the Supreme Court explained in *Henry Schein Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019), "[u]nder the [FAA], arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Id.* at 529. "The parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway questions of arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* If the contract delegates a "gateway issue" to an arbitrator—or, in this case, a small claims court— "a court may not override the contract." *Id.*; *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69, 72 (2010) (courts must respect such contractual delegations unless the plaintiff has a basis to "challenge[] the delegation provision specifically"); *K.F.C v. Snap, Inc.*, 29 F. 4th 835, 837 (7th Cir. 2022) ("if there is a contract, then an arbitration clause may delegate all other issues, including defenses, to the arbitrator"). The Court must respect and enforce the delegation.

---

[2] Baker admits Defendants issued these new terms prior to his filing the Complaint and that he agreed to them. DKT 1-1, Compl., ¶¶ 27-28, 62. Baker expressly waived any argument that Defendants issued the terms in bad faith, and the Court rejected his argument. Order at 5. Defendants provided Baker an opportunity to opt out of the retroactive effect of the new terms but chose not to do so. (*See* Tinder TOU, Ex. 1 at 2) (explaining opt out rights).

Here, the Court ruled that the parties' option to litigate in small claims court is part-and-parcel of the ADR Agreements. Order at 4. The agreements delegate questions of arbitrability to the arbitrator, and questions of the small claims courts' jurisdiction to the small claims court. "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Schein*, 139 S.Ct. at 530. Nor may the Court decide whether Baker's claims may proceed in small claims court where, as here, the parties expressly delegated that question to the small claims court. That is because "a court possesses no power" to decide issues delegated by contract, even if the Court thinks a party's position is "wholly groundless." *Id.* at 529. The Court's only option is to dismiss the case and let the small claims court decide the issue for itself (if and when Baker files there).

*Second*, and relatedly, the Court did not consider that, following a lengthy briefing process concerning whether Baker's claims should proceed in arbitration or small claims court—the *only* two options under the ADR Agreements—JAMS' National Advisory Committee issued an order (the "JAMS Order") stating: "If these disputes may proceed in small claims court, then JAMS has no jurisdiction as a threshold matter . . . . Therefore, *a small claims court must determine whether it has jurisdiction <u>before JAMS may proceed</u>*." (JAMS Order, attached as Ex. 3 at 2). JAMS' clear instruction is that if Baker wishes to proceed, he must file in small claims court and let *that court* assess its jurisdiction to hear whatever claims Baker files there. If the small claims court determines it has jurisdiction, Baker's claims will proceed there. If the small claims court determines it lacks jurisdiction, Baker may re-file in arbitration. There is no scenario in which Baker may pursue his claims in a court other than small claims court while abiding by the ADR Agreements.[3]

---

[3] The Court also erred in stating that (1) "Defendants want to litigate this case either in small claims court *or in the Northern District of Texas*"; and (2) "in their contracts, the parties agreed that this case could have been brought in the Northern District of Texas." Order at 4, 7. Instead, Defendants merely argued that "rather than dismissing the case, this Court may transfer the case to the United States District Court for the

By preemptively deciding whether a small claims court could hear Baker's future claims and determining that the case should proceed in federal court in Texas, the Court disregarded the JAMS Order and carved a new path for Baker's claims that the parties' agreements prohibit. The implications of the Court's error are significant. JAMS indicated it may proceed with Baker's arbitration *if* a small claims court determines it lacks jurisdiction.[4] Thus, but for the Order, the parties' dispute would necessarily proceed in one of the parties' two chosen forums. But the Order improperly usurps that agreed-to right and the JAMS Order in favor of sending the case to be litigated in federal court—a forum the ADR Agreements prohibit.

C. **The Court Manifestly Erred by Not Enforcing the JAMS Order**

The JAMS Order is a binding step in the arbitral process. *See, e.g., Jolly v. Intuit, Inc.*, 485 F. Supp. 3d 1191 (N.D. Cal. 2020); *Rent-A-Ctr.*, 561 U.S. at 70 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce. . . . ."). The parties specifically agreed, prior to appointment of an arbitrator, that JAMS would make this decision. They then argued these issues extensively to JAMS, which issued a decision. The Court committed manifest error by failing to enforce the JAMS Order.

Under the FAA, there is only one way to avoid the effect of an arbitral order—through a motion to vacate on one of four defined bases. *See* 9 U.S. Code § 10(a)(1)-(4). Baker did not seek vacatur. Nor could he because none of the bases apply. *See id.* The JAMS Order is not merely

---

Northern District of Texas, *so that a Texas court may render a ruling on Defendants' motion to dismiss.*" Mot. at 14. The Court's decision *denying* the motion to dismiss and transferring the case to Texas so that Baker can litigate the merits of his individual claims in that federal court was manifest error.

[4] However, some of Baker's claims are subject to arbitration in National Arbitration and Mediation ("NAM"), not JAMS. (Tinder TOU, Ex. 1).

6

persuasive evidence that, in the ADR Agreements, the parties delegated to the small claims courts questions about their jurisdiction and ability to hear the case, it is *binding* and should be enforced.

**D.     The Court Manifestly Erred by Failing to Apply the Strong Presumption Under *Atlantic Marine* In Favor of Enforcing Forum Selection Clauses**

The Order (at 2, 5-6) applies the incorrect standard for a motion to dismiss based on *forum non conveniens* where there is a forum-selection clause. The Court relied on four cases applying the common law *forum non conveniens* analysis: *Sinochem Int'l Co. Ltd v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007), *Instituto Mexicano v. Zimmer*, 29 F.4th 351 (7th Cir. 2022), *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002), and *Deb v. SIRVA, Inc.*, 832 F.3d 800 (7th Cir. 2016). The court should have applied the modified test described in *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the Western Dist. of Texas,* 571 U.S. 49 (2013). Under *Atlantic Marine*, forum-selection clauses should be enforced where the public interest favors enforcement. *Id*. at 64. "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Id*.

It is undisputed the parties agreed to ADR Agreements that included binding forum selection clauses, specifically requiring them to litigate their disputes either in arbitration or small claims court. They also agreed to waive class actions. Baker never challenged the validity of these agreements.[5] He simply ignored them and filed a prohibited class action in a prohibited court.

*Sinochem*, *Zimmer*, *Hyatt* and *SIRVA* are inapposite because none concerns a forum selection clause, so the balancing test and private interests they considered do not apply. As the

---

[5] This case is unlike *Jackson v. Payday Fin. LLC*, 764 F.3d 765 (7th Cir. 2014) and *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F. Supp. 2d 973, 977 (N.D. Ill. 2002), where the party opposing transfer directly challenged the forum-selection clause as unenforceable. *See* Order at fn. 6. Further, no Illinois public policy prevents Illinois small claims courts from deciding their own jurisdiction, as the parties agreed they would. Thus, the Court need not reach the public policy question of whether a small claims courts can, in fact, entertain injunctive relief under BIPA.

Supreme Court explained in *Atlantic Marine*, the court's "calculus changes . . . when the parties' contract contains a valid forum selection clause, which represents the parties' agreement as to the most proper forum." 571 U.S. at 63.

The deference afforded to contractually agreed upon forum selection clauses may yield harsh results—but that is part of the accepted allocation of risks and benefits that occurs when two parties enter into a contract. *Id*. at 66 ("When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations."). *Atlantic Marine* involves transferring a case to another federal forum pursuant to Section 1404(a), but it holds "the same standards apply to motions to dismiss for *forum nonconveniens* in cases involving valid forum-selection clauses pointing to state or federal forums." *Id*. at 66, fn. 8. Distinguishing *Sinochem*, the Court noted that, "in contexts unrelated to forum-selection clauses," a party invoking *forum nonconveniens* ordinarily bears a heavy burden—particularly where dismissal is sought, because it is a "harsh result." *Id*. (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). But "when the plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause . . . dismissal would work no injustice on the plaintiff." *Id*. There is no doubt that Baker violated his contractual obligation by filing suit in a forum other than the fora specified in the parties' forum-selection clause. Thus, because there is a valid forum-selection clause pointing to a state forum, the Court should dismiss the action if the *Atlantic Marine* test is satisfied—notwithstanding any potentially harsh result.

Under *Atlantic Marine*, the only relevant factor is the public interest factor, which is satisfied here. 571 U.S. at 64, 67-68. Significant practical and comity reasons promote the public's interest in Illinois small claims courts ruling on their own jurisdiction. The small claims court is obviously in the best position to decide its jurisdiction. Conversely, this Court does not have the

8

same perspective as the small claims court system: it is not privy to the various (unpublished) orders of the small claims courts at the trial levels on cases similar to this one. Because public interest favors small claims courts deciding the limits of their jurisdiction, and the parties agreed to this in the ADR Agreements, dismissal was appropriate under *Atlantic Marine*.

## II. THE COURT MANIFESTLY ERRED IN FINDING THAT AN ILLINOIS SMALL CLAIMS COURT COULD NOT HEAR BAKER'S CLAIMS

The Order incorrectly states (at 6-7 & fn. 5) that Defendants made no argument as to why this case should be in small claims court. But Defendants incorporated their letters to JAMS—which cite extensive case law on this issue— in the Motion to Dismiss. *See* DKT 18, Motion to Dismiss at 12-13, citing DKT 1-1 at 605-607, 948-50, 1280-82 (the "JAMS Letters," attached as Ex. 4).[6] Defendants also cited the JAMS Order, *directing* Baker to file his case in small claims court for a jurisdictional ruling. *Id*.; *see* (JAMS Order), Ex. 3 at 2-3. Defendants did not belabor this authority because Baker provided no basis for overriding the JAMS Order and this Court lacks authority to determine the small claims courts' ability to hear Baker's claims in the first instance.

If the Court maintains it has such authority, it should consider the authorities cited in the Motion to Dismiss and further explained below. The Illinois Constitution, the Illinois Supreme Court Rules ("ISR") 281-89 and interpreting case law, taken together, refute the Court's findings that Illinois small claims courts cannot hear Baker's claims because (1) small claims courts can issue injunctions; (2) Baker seeks damages below the small claims jurisdictional limit, as calculated by Illinois courts; and (3) BIPA is an appropriate subject matter for small claims court.

---

[6] Indeed, in their Reply, Defendants noted that they did not repeat verbatim the legal arguments and case law in the JAMS Letters for sake of brevity and because the *threshold issue* presented to the Court was that JAMS, in administering the parties' ADR Agreement, decided that *small claims courts* should decide the issue of jurisdiction themselves. *See* Reply, DKT 26, at 15; (JAMS Order, Ex. 3).

### A. Small Claims Courts Can Issue Injunctive Relief

While Baker primarily seeks damages for alleged BIPA violations, his prayer for relief includes boilerplate language seeking injunctive and equitable relief "as necessary" to ensure Defendants' BIPA compliance. The Court speculated that Baker would seek an injunction in small claims and that an Illinois small claims court could not issue an injunction. Order at 7. That is legally wrong and contrary to Illinois state court practice.

In Illinois, small claims courts are a division of the Circuit Courts, which the Illinois Constitution provides are courts of general jurisdiction with broad judicial powers. *See* Ill. Const. Art. VI, § 9 ("Circuit Courts shall have original jurisdiction of all justiciable matters except when the Supreme Court has original and exclusive jurisdiction."). Against this background of wide-ranging jurisdiction, the ISR defines a "small claim" as "based on either tort or contract for money not in excess of $10,000, exclusive of interest and costs." ISR 281.

On its face, ISR 281 does not prohibit small claims courts from issuing injunctive or equitable relief, and case law makes clear that Illinois small claims courts can and do grant injunctive and equitable remedies ancillary to damages claims within their jurisdiction.[7] *See, e.g.*, *Lester Eugene Kenady Revocable Living Tr. v. Baker*, 2014 IL App (4th) 131059-U, ¶ 50 (remanding to small claims court with instructions "to enter a judgment requiring defendant to remove the field post and the four inch pipe; restore the east-west ditch; and permit plaintiff reasonable access to make reasonable repairs to the drainage easement"); *Van Walsen v. Blumenstock*, 66 Ill. App. 3d 245, 249 (5th Dist. 1978) (finding no error where a small claims court *sua sponte* joined a party and ordered lifting of a mechanic's lien upon satisfaction of the judgment

---

[7] The Illinois Attorney General likewise recognizes small claims courts can issue injunctive remedies, such as compelling the eviction of a tenant (regardless of the amount of rent claimed) and repossession of consumer goods leased or purchased on credit. *See* https://ag.state.il.us/consumers/smlclaims.html.

10

because such order "afforded complete and equitable relief to all concerned"); *Baron v. Hoholik*, 2013 IL App (3d) 120096-U, ¶ 14 (noting plaintiff prevailed on his replevin claim in small claims court, requiring the defendant to return an engagement ring); *Muir v. Merano*, 378 Ill. App. 3d 1103, 1103 (5th Dist. 2008) (affirming small claims court's holding that real estate buyer was entitled to contract termination and return of earnest money); *Ahern v. Knecht*, 202 Ill. App. 3d 709, 714 (2d Dist. 1990) (holding small claims court could set aside contract terms).

Furthermore, in some cases, the Illinois appellate courts have found the small claims courts are in the *best position* to rule on injunctive remedies. (*See* JAMS Letters, Ex. 4 at 8-9). In *Staples v. Schemonia*, 2019 IL App (5th) 190037-U, ¶¶ 27-29, for example, the appellate court found a small claims court did not abuse its discretion when, following an evidentiary hearing, it denied the plaintiff's motion for a preliminary injunction. Affording the small claims court the same deference afforded to other circuit court trial judges, the appellate court found the small claims court was "in a superior position to determine and weigh the credibility of the witnesses, observe witnesses' demeanor, and resolve conflicts in their testimony." *Id.*

Similarly, in *Santiago v. Jeffreys*, 2021 IL App (3d) 200153-U, the appellate court remanded a case to small claims court for further proceedings on the plaintiff's claims for declaratory and injunctive relief.[8] *Id.* ¶ 24. And in *Charleston Nat. Bank, Charleston v. Muller*, 16 Ill. App. 3d 380, 382-83 (4th Dist. 1974), the appellate court found dismissal of a declaratory judgment complaint proper because the appellant could have sought the same non-monetary relief in the simultaneous small claims court action. The court expressly rejected the argument "that the small claims court is not a proper forum." *Id*.

---

[8] While "inartfully captioned" a small claims matter, the court remanded the issue of injunctive relief there.

11

This authority demonstrates that nothing prohibits Illinois small claims courts from granting injunctive relief. To the contrary, these courts often address injunctive and equitable remedies ancillary to the damages claims before them. Baker has failed to meet his burden to show that the parties' chosen forum is improper. *Atl. Marine Constr.*, 571 U.S. at 63.

### B. Baker's Case Falls Within the Small Claims Courts' Jurisdictional Limit

The Order also holds Illinois small claims courts lack jurisdiction because Baker's small claims complaint may seek damages exceeding the ISR's $10,000 jurisdictional limit. Order at 6. This holding is a manifest error under Illinois law.

As an initial matter, when calculating the value of Baker's claims for purposes of jurisdiction, attorney's fees and exemplary damages are not counted. *See Schuh v. Plaza Des Plaines Condo. Ass'n,* 2014 IL App (1st) 131999-U, ¶ 35. Next, BIPA provides $1,000 in statutory damages per negligent violation, or $5,000 per intentional violation. The $5,000 amount, however, is properly considered exemplary damages because the plaintiff must show the defendant acted with actual malice. *Rogers v. CSX Intermodal Terminals*, 2019 WL 4201570, at *4 (N.D. Ill. Sept. 5, 2019) (finding that "intentional conduct" under BIPA is conduct performed with a "desire to cause consequences or at least a substantially certain belief that the consequences will result"); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 186 (1978) ("[P]unitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others."); *Blount v. Stroud*, 395 Ill. App. 3d 8, 20 (1st Dist. 2009) (holding "willful and wanton" misconduct "approaches the degree of moral blame attached to intentional harm"). Under *Schuh*, the possibility of $5,000 in statutory damages per violation should not be considered for purposes of determining jurisdiction because such damages would be exemplary and require,

at a minimum, plausible allegations of actual malice—which are lacking here. Thus, for jurisdictional purposes, each of Baker's two alleged BIPA violations is worth no more than $1,000.

Case law also instructs that when assessing a jurisdictional small claims limit, courts do not aggregate the value of a plaintiff's claims against multiple defendants but, instead, assess claims against each defendant as if the plaintiff sued it separately. For example, in *Ras v. Allan Anthony Electric Corp.*, 55 Ill. App. 2d 176 (1st Dist. 1965), the plaintiff sued three defendants, each on one count. *See* DKT 26-1 (attaching *Ras*). The court analyzed whether the monetary value of the claim against each defendant, individually, was within the limit for small claims jurisdiction. *Id.* at 182. In addition, where a plaintiff asserts multiple distinct claims against multiple defendants, the court does not aggregate the value of multiple claims; it instead analyzes whether the value of each claim is within the jurisdictional limit. *Tomaso v. Sestak*, 53 N.E.2d 754, 755 (3d Dist. 2001) (stating none of plaintiff's separate claims "exceeded the court's jurisdiction; and the judgment upon each was within the jurisdiction and separate judgment for each claim was proper"); *see* DKT 26-1 (attaching *Tomaso*).

Thus, for purposes of determining whether Baker's hypothetical claims exceed small claims court jurisdiction: (1) *Ras* holds that Baker's claims against multiple Defendants cannot be aggregated with claims against other Defendants; and (2) *Tomaso* holds that Baker's (two) distinct claims against each Defendant cannot be aggregated together. In short, while Baker is pursuing multiple BIPA claims against two Defendants, each is worth only $1,000—which is easily within the Illinois small claims courts' $10,000 jurisdictional limit.[9]

---

[9] Baker previously argued *Cothron v. White Castle Sys., Inc.,* 2023 IL 128004 allows claims to accrue each time a plaintiff's BIPA rights are violated. The Court wisely did not reference *Cothron*, as it states that it was not opining on the nature or value of damages, and disavowed inappropriate damage models. *Id.* ¶ 43.

13

Finally, Baker's ADR Agreements with each Defendant are distinct, and must be enforced separately. Allowing Baker to aggregate the monetary value of claims he alleges against OkCupid with the claims he alleges against Tinder, simply to avoid small claims court, would contravene case law and the parties' intent that each company's terms of service *separately* govern Baker's use of each company's distinct services.[10]

### C. Baker's Hypothetical Small Claims Case Fits the Topical Categories

Finally, the Order observed that Baker's potential claims might be outside a small claims court's scope under the ISR. Order at 6. The Court cited two cases, *Dew-Becker v. Andrew Wu,* 2017 IL App (1st) 161383-U, and *Hill v. Abou-Jabal*, 2019 IL App (5th) 180213-U, noting they were diametrically opposed on this issue. *See id*. To the contrary, *Hill* is on point and *Dew-Becker* is distinguishable. To the extent they are in tension, a small claims court should resolve the conflict.

In *Hill*, the appellate court held the small claims court could hear an Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim because it is a statutory tort, even though it (1) has different elements than common law fraud, and (2) does not allow for a jury trial. Based on ISR 281 and principles of statutory construction, the court declined to find a "civil action based on . . . tort" excludes an ICFA claim. 2019 IL App (5th) 180213-U ¶ 25.[11] *Hill* is buttressed by *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, ¶ 27, where the Illinois Supreme Court

---

[10] There are important practical consequences to this point. For example, Baker's ADR Agreement with Tinder provides for arbitration in NAM (or small claims court), while his Agreement with OkCupid provides for arbitration in JAMS (or small claims court). Baker is thus barred from pursuing claims against both defendants in a single proceeding.

[11] *See also Goldberg v. Glenstone Homeowners Ass'n*, 2015 IL App (2d) 141025-U, ¶ 9 (alleging ICFA and other statutory actions in small claims court); *Bell v. Ring*, 2018 IL App (3d) 170649, ¶¶ 1, 9 (affirming small claims action ruling under ICFA); *Commonwealth Edison Co. v. Munizzo*, 2013 IL App (3d) 120153, ¶ 1, 986 N.E.2d 1238, 1240 (affirming a case where the defendant filed a counterclaim under ICFA); *Henry v. Bickers*, 2012 IL App (4th) 110634-U, ¶ 2 (affirming small claim court decision where the plaintiff alleged ICFA claim); *Brownridge Inst. of Karate, Inc. v. Dorris*, 162 Ill. App. 3d 483, 484 (4th Dist. 1987) (affirming small claims court ruling in case involving counterclaim under ICFA); *Carroll v. Gibbar*, 2019 IL App (4th) 180418-U, ¶ 4 (considering small claims case involving Slander and Libel Act).

held that the General Assembly need not enact separate legislation to enable Illinois small claims courts to hear private Telephone Consumer Protection Act ("TCPA") claims.

*Dew-Becker* is distinguishable. There, the cause of action submitted to the small claims court arose from the Illinois *Criminal* Code, which provides a civil action against any person who by gambling wins money or a thing of value of $50 or more. 2017 IL App (1st) 161383-U ¶ 11, citing 720 ILCS 5/28-8. Because the claim in *Dew-Becker* was based on the criminal code, it was not based in contract or tort, and is distinguishable from this case.

BIPA claims should be treated the same as ICFA and TCPA claims because they allege violations of privacy rights. Such violations have traditionally been considered as lying in tort. *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, ¶ 34 (recognizing common law tort for invasion of privacy by intrusion upon seclusion); *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 978 (1st Dist. 1990) (discussing common law torts for invasion of privacy). Therefore, Illinois small claims courts can hear BIPA claims. Accordingly, the Court erred by ruling on small claims court jurisdiction and then failed to apply the *Atlantic Marine* standard or consider Defendants' arguments showing small claims courts can hear Baker's individual BIPA claims, seeking injunctive relief.

## CONCLUSION

The Motion for Reconsideration should be granted and the Complaint dismissed.

Dated: June 15, 2023　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　DEFENDANTS

　　　　　　　　　　　　　　　　　　　　By: */s/ Daniel R. Saeedi*