IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MARCUS BAKER, | |
| Plaintiff, | Case No. 2022-cv-6924 |
| v. | Hon. Manish S. Shah |
| MATCH GROUP, INC. *et al.* | Magistrate Judge Jeffrey Cole |
| Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO RECONSIDER THIS COURT'S MAY 31, 2023 RULING**

Daniel S. Saeedi (ARDC No. 6296493)
dsaeedi@taftlaw.com
Rachel L. Schaller (ARDC No. 6306921)
rschaller@taftlaw.com
Elizabeth A. Winkowski (ARDC No. 6316704)
ewinkowski@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
Telephone: (312) 527-4000

Stephen A. Broome (admitted *pro hac vice*)
stephenbroome@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90405
Telephone: (213) 443-3000

*Attorneys for Defendants Match Group, Inc., Match Group, LLC, Hinge, Inc. Humor Rainbow, Inc., People Media, Inc., and Affinity Apps, LLC*

## INTRODUCTION

The base facts are undisputed: Baker first initiated an action against Defendants by filing a statement of claim in his individual capacity with JAMS pursuant to the parties' ADR Agreements. These contracts include a class action waiver and permit either party to elect to proceed in small claims court. Upon Defendants' election, in an enforceable arbitral order (the "JAMS Order"), JAMS dismissed Baker's individual arbitration claim and directed him to file in small claims court. All that was left to do under the ADR Agreements was for Baker to file an individual petition in Illinois small claims court. Had that occurred, the small claims court could have determined whether it had jurisdiction over Baker's individual claim. But, that individual action that JAMS dismissed does not exist today and is not before the Court or any other court.

Instead, Baker filed a prohibited class action in a prohibited forum—Chancery Court—that Defendants removed to this Court. Baker never filed the class action with JAMS or another arbitration provider, and thus Defendants never had an opportunity to elect to have it sent to small claims court. Nor has JAMS ever reviewed the class action complaint or issued an order dismissing it in favor of small claims court. Thus, any decision on the Complaint in front of the Court, and whether a small claims court would have jurisdiction, is not ripe and is advisory.

Baker's filing of a class action in Chancery Court obviously breached the ADR Agreements' arbitration, class waiver, and mandatory forum selection clauses. In its Order (the "May 31 Order"), the Court: (1) denied Defendants' motion to dismiss on the basis of its determination that a small claims court would lack jurisdiction over this case; and (2) transferred the case to Texas. The Court should have dismissed the case under the mandatory forum selection clause, or in the alternative, transferred it to Texas for the Texas court to rule on Defendants' motion to dismiss. The Court's determination that a small claims court would not have jurisdiction necessarily had to rely upon either (i) the class action complaint that, to date, has never been the

1

subject of a small claims court demand, or (ii) Baker's individual action, which he apparently is no longer pursuing, forcing the May 31 Order to be built on conjecture. The Court's ruling is thus advisory in nature and constitutes manifest error. The Court committed additional error by resolving a critical issue that the ADR Agreements—and the JAMS Order—delegated to the small claims court itself.

Finally, the Court's jurisdictional analysis fails to take into account the extensive case law that supports the small claims court being able to hear a properly filed individual BIPA case by Baker. For these reasons, the Court should reconsider the May 31 Order and dismiss this lawsuit.

## ARGUMENT

I. **THE COURT MANIFESTLY ERRED BY DECIDING WHETHER SMALL CLAIMS COURTS HAVE JURISDICTION OVER HYPOTHETICAL CLAIMS THAT MAY NEVER EXIST IN SMALL CLAIMS COURT.**

   A. **The Court issued an advisory opinion speculating on a series of contingencies that might never come to fruition.**

Baker erroneously contends that Defendants "waived" their argument that the Court lacks subject-matter jurisdiction to decide the small claims court's jurisdiction. To the contrary, subject matter-jurisdiction may be raised "at any time." *See Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008); *Nationscredit Home Equity Servs. Corp. v. City of Chicago*, 135 F. Supp. 2d 905, 908 (N.D. Ill. 2001) ("Objections to subject-matter jurisdiction cannot be waived, and parties are free to question the court's subject-matter jurisdiction at any time.").

Nor is there any merit to Baker's argument that the Court has jurisdiction to decide this issue because it can simply evaluate whether the small claims court would have jurisdiction over Baker's "*actual* complaint"—*i.e.*, the class action complaint that he improperly filed in a prohibited forum. That is not the question. The class action complaint (1) has never been submitted to JAMS and (2) has never been the subject of a small claims court election by Defendants. Indeed,

2

if Baker's class action Complaint were filed with JAMS, it is plausible that Defendants would seek its immediate dismissal under the parties' class action waiver provision and forgo their right to elect small claims court. Thus, there is no basis or reason for the Court to determine or even discuss a hypothetical small claims court's jurisdiction to hear the "actual" class action complaint currently pending. *See, e.g., Basic v. Fitzroy Eng'g, Ltd.*, 949 F. Supp. 1333, 1337–38 (N.D. Ill. 1996); MTR, pp. 1-3.

Further, Baker should not be permitted to patently disregard and breach the ADR Agreements' class waiver, arbitration, and forum selection clauses only to obtain a preemptive ruling that the small claims court would lack jurisdiction over a complaint that Baker never filed. The question is whether the small claims court would have jurisdiction over Baker's *individual* claim if he were to file there in accordance with the ADR Agreement. That complaint necessarily would look very different from the complaint the Court analyzed—and it was speculative for the Court to assume otherwise. And, since Baker has not yet filed an individual complaint in small claims court, there is no basis for this Court to analyze the small claims court's jurisdiction. The only decision the Court needs to make with respect to the "*actual* [class action] complaint" pending before the Court is whether Baker properly filed it in the Court. He did not, and the Court lacks jurisdiction to do anything other than dismiss the case.

The Complaint filed by Baker violated the ADR Agreements' arbitration class waiver, and forum selection provisions, requiring dismissal. Any decision beyond dismissal is speculative and falls outside of the Court's jurisdictional limits.

    **B.**     **Baker effectively concedes that the parties delegated the issue of the small claims court's jurisdiction to the small claims court itself.**

Contrary to Baker's argument, the May 31 Order did not address delegation at all, even though Defendants had argued that the ADR Agreements and the JAMS Order delegated to the

3

small claims court questions of its own jurisdiction. *See* May 31 Order, Dkt. 27; Motion to Dismiss ("MTD"), Dkt. 18, 5-6, 9-10, 12-13; Reply 15-16. Tellingly, although the Motion for Reconsideration devotes several pages to explaining that binding Supreme Court precedent *requires the* Court to give effect to the parties' delegation of this issue to the small claims court, Baker utterly fails to address these arguments or Defendants' controlling authority. *See* Opp. at I.C. By failing to respond, Baker tacitly concedes that the Court failed to give effect to the parties' contractual delegation of this question, thereby committing a manifest error of law.

Faced with this reality, Baker argues that the Court addressed delegation when it stated that an "arbitration agreement cannot require a party to forgo substantive statutory rights." May 31 Order, p. 7. But, the Court was not addressing the question of delegation when it made this statement. Rather, it was analyzing the *delegated question*: whether a small claims court would have jurisdiction over a hypothetical complaint. The Court did not address the critical issue of delegation, *i.e., who* should determine the small claims court's jurisdiction.

Moreover, parties do not give up substantive rights by delegating issues of jurisdiction to a particular forum. Indeed, this happens frequently in the context of delegating arbitrability questions to arbitration forums and the Supreme Court has been clear that such delegations must be enforced. *See* Motion for Reconsideration ("MFR"), Dkt. 31, p. 4 (citing cases requiring "gateway issue" delegation clauses to be respected and enforced). In any event, delegating the question of a court's jurisdiction to that very court is hardly a derision of a party's substantive rights. The small claims court has innate power to assess whether it has jurisdiction over the parties and claims before it.

Baker also argues that JAMS, in closing the arbitrations, did not find that the small claims court should decide its own jurisdiction. Opp., Dkt. 34, p. 8. But, his argument ignores the plain

4

language of the JAMS Order: "If these disputes may proceed in small claims court, then JAMS has no jurisdiction as a threshold matter . . . . Therefore, *a small claims court must determine whether it has jurisdiction before JAMS may proceed.*" Complaint, Dkt. 1-1 ("Compl."), Ex. O, 1290-91 (emphasis added). Contrary to Baker's assertion, JAMS explicitly recognizes the parties' delegation of the jurisdictional question to small claims court and—respecting that delegation—acknowledges that JAMS lacks authority to determine that issue. Thus, both the ADR Agreements and the JAMS Order expressly delegate the issue of jurisdiction to the small claims court. *See, e.g.*, Tinder TOU, Dkt. 31-1, p. 18 ("Any controversy over the small claims court's jurisdiction *shall be determined by the small claims court*." (Emphasis added)). And—as Defendants previously addressed, and Baker does not dispute—the JAMS Order is a binding part of the arbitral process with which Baker must comply. *See* MTD, Dkt. 18, p. 11; Reply, Dkt. 26, pp. 11, 14 (discussing the JAMS Order and *Jolly v. Intuit, Inc.*, 485 F. Supp. 3d 1191 (N.D. Cal. 2020), which recognized that moving claims from arbitration to small claims was an enforceable step in the parties' agreed arbitral process); MFR, Dkt. 31, pp. 3-7.

Baker next argues that he has not asked the Court "to do anything contrary to the JAMS order," and, instead, simply seeks "to have the merits of his claims, at long last, heard before a forum possessing subject matter jurisdiction over them." Opp. 9.[1] This argument fails as well because Baker's filing of a *class action* in a prohibited forum—not small claims court—clearly violates the ADR Agreement. In fact, the May 31 Order *rewards* Baker's violations, by improperly deciding an issue reserved for a different forum, through the lens of a faulty pleading.

---

[1] Here again, Baker conflates his individual action, which he brought before JAMS, and the putative class action brought before this Court in material breach of the ADR Agreements.

5

Baker also argues—again without support—that because *certain* claims may ultimately be litigated in Texas court, he can file his claim in the forum of his choosing and avoid small claims court. This notion is also meritless. Adopting it would ignore the ADR Agreements' express terms, which state that claims can *only* be litigated in Texas courts if they are not first required to be litigated in arbitration or small claims court. Here, both the ADR Agreements and the JAMS Order provide that the individual claim Baker brought before JAMS must, if it is going to be brought back to life, be filed as an individual claim in small claims court. The Court should respect the ADR Agreements and the JAMS Order, which was a valid ruling in the arbitral process that Baker submitted to when he filed his individual claims with JAMS.

### C. The Court failed to afford the small claims provision the extreme deference required under *Atlantic Marine*.

Defendants showed in their opening brief that the Court further erred by failing to afford the small claims court forum selection provision extreme deference, as required by *Atlantic Marine*. *See* MTD 6; Reply 16 and fn. 8. To circumvent the *Atlantic Marine* test, which requires dismissal of the case if filed in a forum other than the one specified in a valid forum-election clause, Baker incorrectly relies upon a single case, *Jackson v. Payday Fin., LLC*, which directly undercuts his argument. In *Jackson*, the plaintiff opposed dismissal because the contract containing the forum-selection clause was the product of fraud and the chosen forum—arbitration by the Cheyenne River Sioux Nation—did not exist. 764 F.3d 765, 776 (7th Cir. 2014); *see also Inetianbor v. CashCall, Inc.*, 962 F. Supp. 2d 1303, 1309 (S.D. Fla. 2013), *aff'd*, 768 F.3d 1346 (11th Cir. 2014) (finding arbitration by the Cheyenne River Sioux Tribal Nation was not available since, despite repeated attempts, defendant could not locate an authorized representative of the tribal counsel to conduct an arbitration). But Baker has never challenged the ADR Agreements as unconscionable or wrongly procured. And the Illinois small claims courts *do* exist and are fully

6

equipped to decide questions of their own jurisdiction. Baker's argument that small claims courts are not "available" because they lack subject-matter jurisdiction over his claims presents "a different focus than the Seventh Circuit and Eleventh Circuit took in *Jackson* and *Inetianbor* when those courts invalidated the forum selection clauses." *See Brown v. W. Sky Fin., LLC*, 84 F. Supp. 3d 467, 481 (M.D.N.C. 2015) (dismissing case because tribal court, rather than federal court where action was improperly filed, should determine its subject-matter jurisdiction over plaintiffs' claims).

Baker's authorities further demonstrate that courts constrain their evaluation of the "availability and adequacy" of a chosen forum to whether that forum has *personal* jurisdiction over the parties. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (noting district court's observation that alternative forum existed in Scotland and defendants' submission to Scottish court's jurisdiction); *IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 645 (7th Cir. 2022) (enforcing forum selection clause where "[n]o one question[ed] that California is an adequate and available alternative forum."). Baker does not cite a single case in which a court took it upon itself to evaluate an alternate forum's subject-matter jurisdiction under that forum's own internal rules rather than relying on such court to assess its own jurisdiction. That is because courts are admonished *not* to wade into a comparative analysis of "the rights, remedies, and procedures available under the law that would be applied in each forum." *Piper Aircraft*, 454 U.S. at 251. To the contrary, the public interest supports dismissal under *forum non conveniens* "to help courts avoid conducting complex exercises in comparative law." *Id*. Here, the Court should not wade into a comparative analysis of the rights, remedies, and procedures available in Illinois, Texas, or any other state's small claims court. Instead, public interest supports small claims courts deciding their own jurisdiction.

In this case, there is no dispute that Illinois small claims courts exist and have personal jurisdiction over the parties.[2] Because the Court's obligation when assessing the "availability and adequacy" of a chosen forum is to confirm the chosen forum actually exists and can assert personal jurisdiction over the parties, the Court should conduct that analysis and then honor the parties' forum selection clause and dismiss this case. By instead undertaking a substantive analysis of a hypothetical small claims court's jurisdiction over a non-existent petition, the Court rewarded Baker's improper litigation tactics of breaching the ADR Agreements and disregarding the JAMS Order. Baker conceded JAMS' authority as to his individual claim when he filed an arbitration there. But after not getting the desired result, he ignored the contract all together and filed this improper class action. The Court should not countenance this behavior.

## II. THE COURT MANIFESTLY ERRED IN FINDING THAT AN ILLINOIS SMALL CLAIMS COURT COULD NOT HEAR BAKER'S INDIVIDUAL CLAIMS.

The Court should defer to an Illinois small claims court to determine its own jurisdiction– should Baker ever file a petition in small claims court. If the Court maintains that it was proper to determine the small claims court's jurisdiction over a claim Baker has never filed there, it should nevertheless grant the Motion for Reconsideration and dismiss the case because on-point Illinois cases demonstrate that Illinois small claims courts would indeed have jurisdiction to hear Baker's case. Baker does not rebut these cases. Instead, he argues that the Court should disregard them because they were not referenced in the Motion to Dismiss. This is incorrect. Defendants referenced this case law and pointed to the letters to JAMS, which contained briefing on this issue,

---

[2] Baker argues Defendants waived Texas small claims court as a possible forum, but this is incorrect. It was Baker's lawyers who first raised Texas small claims courts in its letters to JAMS, *see* Compl., Dkt. 1-1, Ex. A, at pp. 662-64, undoubtedly due to the case law that makes clear that Illinois is an acceptable forum. Although a Dallas County, Texas small claims court is a permissible forum because it has personal jurisdiction against all parties, Defendants have never taken the position that the claims must or even should be filed there.

8

and which *persuaded* JAMS to direct Baker to ask a *small claims court* to determine its own jurisdiction. These cases are part of the record[3] and should be considered. [4]

### A. Baker concedes that small claims courts can issue injunctions and offers no explanation for why these courts cannot provide the injunctive relief he purports to seek.

Baker recognizes the extensive case law that Defendants provided where small claims courts awarded injunctive relief as necessary under the circumstances presented. *See* Opp. 12 ("Defendants' authority purportedly demonstrates that small claims courts may in limited circumstances grant various types of unrelated 'injunctive and equitable remedies ancillary to damages claims'. . . ."). Baker argues that while these cases granted injunctive relief, they cannot afford relief "of the kind Baker seeks." *Id.* Baker's retort is unsupported. Although a request for injunctive relief was never fleshed out in Baker's individual action, in the pending class action Complaint the request for injunctive relief seeks nothing more than an order restraining Defendants from "violating the law." Dkt. 1-1, p. 560. Baker, as a class representative, has not filed a motion for a temporary restraining order or preliminary injunction. Instead, Baker asks the Court to first decide all factual and legal issues related to his damages claim, and then entertain the issue of an

---

[3] *See* Dkt. 18, p. 16 (referencing the extensive case law they provided JAMS on this issue, which Baker attached to the Complaint); *see* Dkt. 1-1, Ex. J, pp. 605-07, Ex. L, 944-951, and Ex. N, pp. 1278-1287 (the "JAMS Letters," also attached as exhibits to the MTR). In the Reply, Defendants also provided authority regarding how Illinois courts calculate the monetary threshold in small claims court. *See* Reply, Dkt. 26, pp. 16-17, fn. 8.

[4] Baker's citation to *U.S. v. Macchione* and *Alice F. v. Health Care Service Corp.* is misplaced. These cases involved parties bringing up completely new issues on reconsideration that had never been referenced before. In *Macchione*, the court found the defendant did not preserve an argument by listing fifteen prior filings where his arguments could be found. 660 F. Supp. 2d 918, 925 (N.D. Ill. 2009). Defendants, on the other hand, provided pin-point cites in the record to the Exhibits and page numbers where the small claims jurisdiction arguments were clearly laid out. Likewise, in *Alice F. v. Health Care Service Corp.*, No. 17 C 3710, 2019 WL 11626480 at *2 (N.D. Ill., June 27, 2019), also cited by Baker, Opp. 10, the plaintiff raised a five-factor test for granting attorneys' fees under ERISA for the first time in a motion for reconsideration.

injunction requiring Defendants to comply with BIPA. Compl., pp. 104, 107. In this way, Baker seeks the same type of injunctive relief sought in the cases Defendants provided to the Court. *See* MFR, pp. 10-12. In response, Baker does not cite a single case affirmatively stating that Illinois small claims courts cannot grant injunctive relief, precisely because no such case exists.

In the context of the prohibited putative class action Complaint, Baker contends that no small claims court has ever provided "forward-looking class-wide injunctive relief." Opp, p. 12. In making this unsupported argument, Baker also underscores his breach of the ADR Agreements in bringing a class action. The Court has already (1) recognized the existence and validity of the ADR Agreements and (2) found Baker "waived the right to file a class action." May 31 Order, pp. 3, 5. Therefore, Baker's argument that his injunction request somehow prevents a small claims court from hearing this case should be rejected as an attempt to allege prohibited class claims and use that wrongdoing to justify why he cannot go to the forum prescribed in the contract.

Finally, Baker argues—without support—that the analysis somehow changes because the injunctive relief is pursuant to a statutory claim. No Illinois case makes this distinction, and BIPA does not specify any type of unique injunctive relief. *See* 740 ILCS 14/20. To the contrary, Defendants' cited cases contain examples of statutory claims in small claims court that provide injunctive relief. For example, in *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, the Illinois Supreme Court recognized the small claims court was the proper forum for claims under the Telephone Consumer Protection Act. Baker attempts to distinguish this case by arguing that it only concerned monetary damages, but he is incorrect. In *Italia Foods*, the plaintiff also asked for the same type of injunctive relief that Baker seeks albeit under the TCPA, *i.e.,* an order "prohibiting Defendant from engaging in the statutory violations at issue in this action." *See Italia Foods* Complaint, attached hereto as Exhibit 1. Thus, Baker is incorrect in arguing that a request for a

10

statutory injunction in a small claims court complaint defeats small claims court jurisdiction. And, to the extent the Court considers this issue a close call, which it is not, the logical thing to do is to defer it to the small claims court to make this determination as to its own injunctive power under Illinois state constitutional and rule parameters. The small claims court is best situated to decide this issue.

### B. Baker fails to rebut Defendants' case law on the jurisdictional limit.

The Motion to Dismiss cited Illinois case law demonstrating that individual BIPA claims are within the jurisdictional limit of the small claims court. *See* MTD, p. 13 and Reply, p. 16 (explaining JAMS Letters attached to the Complaint and also filed at Dkt 31-3).

In response, Baker first contends that this Court must aggregate all of his claims against a particular defendant and then decide whether his claims exceed the maximum dollar threshold for small claims. Opp. 12. Notably, he does not dispute, and therefore concedes, that claims against *separate entities* are not aggregated. *See, e.g.*, *Ras v. Allan Anthony Elec. Corp.*, 55 Ill. App. 2d 176, 181-82 (1st Dist. 1965). Because he does not challenge the anti-aggregation rule or even mention *Ras,* Baker's monetary threshold argument falls apart, even if his two BIPA claims are $5,000 each (which for reasons below is incorrect). Despite the hundreds of allegations in Baker's class action Complaint against six Defendants, Baker alleges exactly two BIPA claims against two Defendants. *See* Compl., Counts I and II.[5] Even if these claims were valued at $5,000 each, they

---

[5] Baker's Count III for breach of good faith and fair dealing (Compl. 107) has already been rejected by the Court in its most recent ruling (Order 5), and, at any rate, is not an independent cause of action under Illinois law. *See Spadoni v. United Airlines, Inc.*, 2015 IL App (1st) 150458, ¶ 59 ("Illinois law does not recognize an independent cause of action for breach of implied duty of good faith and fair dealing in a contract.") Baker was a user of exactly two dating apps: Tinder (operated by Defendant Match Group, LLC) and OkCupid (operated by Defendant Humor Rainbow, Inc.). Compl., ¶ 203. He alleged only that he "uploaded several photos to Defendants' platform including photos of [himself]." *Id*. ¶ 204.

would fall within, to the dollar, the jurisdictional threshold of $10,000 or less for small claims court. *See* Ill. Sup. Ct. Rule 281 (setting the $10,000 or less limit for small claims). Baker underscores this by citing *Benson v. Abbott*, 326 Ill. App. 3d 599 (3d Dist. 2001), which reaffirms *Ras*: "Because the plaintiff in *Ras* sued three separate defendants in three separate counts, the trial court held that each count was a separate cause of action. Since each award against each defendant was below the authorized limit, the lower court's judgment was affirmed." *Benson*, 326 Ill. App. 3d at 601; *see* Opp. 12 (citing *Benson*).

Furthermore, Baker's claims would undoubtedly be worth much less than $10,000, for several reasons. First, Baker's contention that claims *against a particular defendant* must be aggregated is incorrect in the context of this case. Baker fails to distinguish *Tomaso v. Sestak*, other than calling it old.[6] *Tomaso* held that distinct claims could not be aggregated together. In implying that *Tomaso* is no longer good law, Baker cites *Benson*, which held that negligence claims seeking personal damages in one count and property damages in another, based on the same negligent act, were essentially the same claim. *Benson* is easily distinguishable because Baker is pursuing different violations of different sections of BIPA, for different conduct (failure to issue a BIPA compliant policy and abide by retention standards (Section 15(a) of BIPA), and failure to obtain informed written consent from consumers (Section 15(b))). *See* 740 ILCS 14/15(a-b); *see* Compl. Thus, by Baker's own admissions, these are separate claims based on separate conduct that cannot be aggregated, and this case is analogous to *Tomaso* rather than *Benson*.

---

[6] Baker incorrectly labels *Tomaso* as an "unpublished case," when in reality it is a binding Illinois case that is published in the Court Reporter annals, and it is only Westlaw that fails to include the text other than the case abstract, as is its common practice for appellate cases dating pre-1960s. Defendants agree "53 N.E.2d 754" is not the correct citation for Tomaso. *See* Opp. fn. 4.

Second, it is undisputed that BIPA negligence claims carry a *discretionary* $1,000 damages amount for negligent violations and a $5,000 *discretionary* damages amount for intentional ones. 740 ILCS 14/20. Baker also does not challenge, and again concedes, that Illinois case law holds that punitive damages amounts are not counted for purposes of small claims jurisdictional thresholds. *Schuh v. Plaza Des Plaines Condo. Ass'n*, 2014 IL App (1st) 131999-U, ¶ 35. Thus, the inquiry is whether BIPA's $5,000 exemplary damages amount for intentional violations falls within the punitive category. It does.

To understand why, the Court must track what Illinois courts have to say about an intentional *mens rea* when committing a tort. "Intentional conduct," for purposes of a tort, does not merely mean that a defendant intended to act. Rather, it means that a defendant intended to act "with a desire to cause consequences or at least a substantially certain belief that the consequences will result." See *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 618 (N.D. Ill. 2019) (internal quotations omitted); citing *Ziarko v. Soo Line R. Co.*, 161 Ill. 2d 267, 272 (1994). Put another way, under Illinois law, intent to act, for purposes of a tort, means intent *to harm*. It is in this context that BIPA creates a five-fold statutory damages multiplier, precisely because tortfeasors that act with this *mens rea* are more culpable. Given this reality, and that BIPA does not expressly allow for other "punitive damages" outside of this 5x multiplier for intentional conduct, such intentional damages fall within the punitive category, which Baker concedes is not counted for the small claims' jurisdictional threshold.

For these reasons, Baker's claims are worth (1) $1,000 per defendant (applying *Ras, Tomaso* and *Rogers*), or (2) $2,000 per defendant (applying *Ras* and *Rogers*), or, at most, (3) $10,000 per defendant (applying *Ras* and an intent to injure *mens rea*). In any scenario, the small claims court monetary threshold does not bar Baker's action from proceeding there.

13

Baker relies on the Illinois Supreme Court's recent ruling in *Cothron v. White Castle Systems, Inc.*, 2023 IL 128004, to improperly inflate the value of his BIPA claims, hoping to defeat small claims jurisdiction. Baker's argument is misplaced. The Complaint lacks any facts describing *when* he submitted himself to multiple violations of BIPA, under *what* circumstances, using *what* specific technology, and with *which* entities. Thus, Baker has not come close to meeting the pleading standards that the Illinois state court system requires. *See Nav Consulting, Inc. v. Sudrania Fund Servs. Corp.,* 2023 IL App (1st) 211015-U, ¶ 24 (dismissing complaint with prejudice and noting that "mere conclusions of law or fact" are not taken as true "unless supported by specific factual allegations."), *citing Cretella v. Azcon, Inc.*, 2022 IL App (1st) 211224, ¶ 11.[7] Even more, Baker's counsel *admits* that Baker's claims are worth *at most* $5,000 per claim, by advertising to potential clients that if they retain the law firm they "may be entitled to compensation *up to* $5,000." *See* Labaton Advertisement, attached hereto as Exhibit 2 (emphasis added).

Furthermore, Baker misconstrues *Cothron*, which focused on what constitutes a "violation" under BIPA, *not* the value of those violations. *See Cothron,* 2023 IL 128004, at ¶ 43 ("We respectfully suggest that the legislature review these policy concerns and make clear its intent regarding the assessment of damages under the Act"). *Cothron* further stated that BIPA damages are purely "discretionary" and cautioned against excessive damages awards. *Cothron*, 2023 IL 128004, at ¶ 42. And, to the extent any "per scan" damages are awarded under BIPA, *Cothron* makes clear that such amount must be "designed to deter future violations." *Id.*; *see Int'l Union of Op. Eng'rs Loc. 150 v. Lowe Excavating Co.,* 225 Ill. 2d 456, 493 (2006) (stating that "an award of punitive damages serves to further a State's legitimate interests in punishing unlawful conduct

---

[7] To the extent that the Court believes that *Cothron* is relevant for purposes of jurisdiction, given Baker's paltry pleadings, the small claims court is equipped to address these issues and whether it may proceed on issues of liability before determining damages issues.

and deterring its repetition" (internal quotation marks omitted)). Damages designed not to compensate for past wrongs, but to deter future ones, are the type that are *not counted* for purposes of small claims jurisdiction. *See Schuh,* 2014 IL App (1st) 131999-U, ¶ 35, discussed *supra.*

## CONCLUSION

The above Illinois cases and experience of the small claims court shows that the jurisdiction of that court is an issue best left for the small claims court to decide. Because Baker agreed to delegate this question to the small claims court, and JAMS ordered that Baker file his individual action there, small claims court is the *only forum* that can decide the jurisdictional issue. The Court should reconsider the Order and dismiss this case.

Dated: July 20, 2023                                      Respectfully submitted,

                                                          DEFENDANTS

                                                          By: /s/ Daniel R. Saeedi